1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 02/25/09**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

DR. ELLEN W. CUTLER,

Plaintiff,

vs.

ENZYMES, INC.; EMPIRE HEALTH, LLC; FRANK GUZZO; JAMES GREAVES; and LYNN GREAVES,

Defendants.

Case Number C 08-04650 JF (RS)

ORDER GRANTING ENZYMES INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING THE GREAVES' MOTION TO DISMISS

[Re: Docket Nos. 10, 12]

Defendant Enzymes, Inc.("EI") seeks an order to dismiss the copyright infringement claim for failure to state a claim, and Defendants James Greaves and Lynn Greaves (collectively "the Greaves") seek an order to dismiss for lack of personal jurisdiction.  For the reasons discussed below, (1) EI's motion to dismiss for failure to plead with specificity will be granted with leave to amend. Any amended complaint shall be filed within thirty (30) days of the date of this order; (2) Greaves' motion to dismiss will denied; and (3) a Case Management Conference will be set for April 24, 2009, at 10:30 am.

# I. BACKGROUND

## A. Procedural Background

Plaintiff Dr. Ellen Cutler ("Cutler") filed this action on October 7, 2008, alleging, *inter alia*: 1) copyright infringement; 2) trademark infringement; 3) appropriation of name or likeness; 4) intentional interference with economic relations; 5) libel; 6) breach of oral contract; 7) unfair competition; and 8) fraud.

Now pending before the Court are two motions to dismiss, one by EI for failure to state a claim, and one by the Greaves for lack of personal jurisdiction. For the reasons explained below, EI's motion will be granted with leave to amend,  and the Greaves' motion will be denied.

## B. Factual Background

Cutler claims to be the creator of the BioSET® system[1] as well as the owner of the BioSET trademark ("Mark") and three registered copyrights[2] ("Published Works").  Compl. at ¶¶ 13-15.   She also claims to be the owner of BioSET, a business that designs, develops, promotes, advertises and licenses a wide variety of enzyme products, all under the BioSET® name.  *Id*. at ¶ 19. Cutler alleges that Defendants are in the business of marketing and distributing enzyme products.  *Id*. at ¶ 21.  Defendant James Greaves is a shareholder and President of EI.  *See* James Greaves Decl. at ¶ 2.  Defendant Lynn Greaves is a shareholder and Vice President of EI.  *See* Lynn Greaves Decl. at ¶ 2.  Cutler alleges that EI and Empire Health Inc. ("EH") are alter egos of  Defendant Guzzo ("Guzzo") and the Greaves, claiming that that EI and EH are mere shells, instrumentalities, and conduits through which Guzzo and the Greaves carried on their business while exercising complete control and dominion over EI and EH.

Cutler alleges that she began doing business with EI and the Greaves in 1999, that the

---

[1]The BioSET system is a digestive enzyme replacement system that replaces the nutrients lost through the processing and preparation of foods and thus alleviates allergies, asthma, digestive disorders, and other health conditions.  Compl. at ¶ 13.

[2]Live Free From Asthma and Allergies, Reg. No. TX0006572302; MicroMiracles: Discovery the Healing Power of Enzymes, Reg. No. TX0006490642 and TX0006294659; and The Food Allergy Cure, Reg. No. TX0006049461 and TX0005416188.

1   parties orally agreed that she would license the Mark to EI, which would  manufacture and

2   distribute the BioSET® enzyme products, and in consideration of this arrangement, Defendants

3   EI and the Greaves agreed to pay her a twenty-five percent (25%) royalty on all sales of

4   BioSET® products that EI distributed. *Id*. at ¶¶ 23-25.  In 2001, Cutler published a book, The

5   Food Allergy Cure, which discussed the establishment of a new enzyme line called WellZymes.

6   Cutler claims that she agreed orally with EI and the Greaves that she would be paid a twenty-five

7   percent (25%) royalty on all sales of WellZymes products. *Id*. at ¶ 26.  Cutler alleges that EI and

8   the Greaves never made any royalty payments to her on the WellZymes products and did not

9   make all required royalty payments on the BioSET® products.  *Id*. at ¶ 28.

10          Cutler alleges further that she retained Guzzo to assist with collection of the unpaid

11   royalties from EI in 2006, and that Guzzo repeatedly contacted EI on Cutler's behalf to demand

12   that the delinquent royalties be paid to Cutler.  *Id*. at ¶ 28.  Cutler claims that in late 2006 or early

13   2007, Guzzo told her that he did not think that EI and the Greaves would pay the royalties they

14   owed. *Id*. at ¶ 30.   Cutler alleges that Guzzo suggested that the creation of a separate BioSET®

15   enzyme manufacturing and distribution process to cut EI and the Greaves out of the deal without

16   their knowledge, and that in February 2007, Guzzo and the Greaves suggested forming EH to

17   market and sell the BioSET® products.  *Id*. at ¶ 31. She claims that Guzzo represented to her that

18   the purpose of EH was to set up a separate warehouse and distribution system for the BioSET

19   products independent from EI, and that Guzzo planned to "play both sides for a while," so that

20   Lynn Greaves would not suspect anything was amiss in Guzzo's relationship with EI.  *Id*. at ¶¶

21   31-32.  Cutler alleges that Guzzo actually was conspiring with EI, EH and the Greaves to

22   withhold royalty payments due her from sales of the BioSET® products and the WellZymes

23   products.  *Id*. at ¶ 34.

24          Cutler claims that on May 19, 2008, she provided written notice of termination

25   ("Termination Notice") to counsel for the Greaves, EI and EH with respect to all authorizations

26   and licenses pertaining to the use of the Mark, and of Cutler's name, photograph, images, voice

27   or other rights of publicity ("Publicity Rights").  *Id*. at ¶ 37.  She alleges that the Termination

28

1  Notice included a demand for removal of all references to the Mark and Publicity Rights from all

2  websites owned or controlled by the Greaves, EI, or EH, and that the Greaves, EI, and EH

3  immediately cease all marketing, distribution, and sales of all products bearing the Mark and

4  Publicity Rights. *Id.*

5       Cutler claims that Defendants responded to the Termination Notice in writing through

6  counsel on May 22, 2008, *Id.* at ¶ 43, and that the reply letter stated that EI "will agree to

7  immediately stop any further production of product with the BioSET marks or use of other rights

8  of publicity owned by your client . . . . Enzymes, Inc. and Empire Health, Inc. agree to remove all

9  references to BioSET marks and publicity rights from their websites." *Id.*  She claims that the

10  Defendants instead increased the use of the Mark and Publicity Rights, and of the Published

11  Works. *Id.*

12                                         **II.  EI**

13  **A. Legal Standards**

14       "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

15  cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

16  *Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion

17  to dismiss, "all allegations of material fact are taken as true and construed in the light most

18  favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th

19  Cir. 1996).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does

20  not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

21  'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

22  the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955

23  (2007) (internal citations omitted).  Leave to amend must be granted unless it is clear that the

24  complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of Corrections*,

25  66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

26  ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

27       "To state a claim for copyright infringement, the claimant must allege ownership of a

28

1   copyright and copying of protected elements by the defendant." *Mintel Learning Technology,*

2   *Inc. V. Beijing Kaidi Education & Tech. Dev. Co., Ltd dba Kaidisoft, et al*., 2007 WL 2288329,

3   at *9 (N.D. Cal., Aug. 9, 2007) (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th

4   Cir. 2000)).

5   **B. Analysis**

6        EI contends that the complaint does not contain any allegations regarding the "copying of

7   protected elements by the defendant." *See* Def. Mot. at 1:15-18.  More specifically, EI contends

8   that the complaint does not allege what acts during what period of time EI infringed Cutler's

9   copyrights. *Id*. at 2:23-24.  Cutler contends that the complaint is sufficient because the it states,

10  "[d]efendants, however, did not do so and instead . . . increased their use of the Mark and

11  Publicity Rights, as well as the Published Works."  Compl. at ¶ 43.  Cutler argues it may be

12  inferred that EI posted her copyright material on its website and that the relevant time-frame is, at

13  a minimum, from May 22, 2008 going forward.  Pl. Mot. at 4:17-20. Cutler cites *Perfect 10, Inc.*

14  *v. Cybernet Ventures*, *Inc*., 167 F. Supp. 2d 1114 (C.D. Cal. 2001), in support of her argument.

15  In *Perfect 10*, the complaint identified ownership of copyright materials, websites where

16  infringing conduct could be found and specific instances of copyright infringements.  *Id*. at 1121.

17  The court rejected the defendant's argument that the copyright claims nonetheless were

18  insufficient because the complaint did not state every copyright relied on, every image being

19  copied and the dates of the infringement.  *Id*. at 1120.  The court held that such detail with

20  respect to each of the hundreds, even thousands, of alleged infringing photographs within the

21  various websites would be contrary to the liberal pleading standards established by Rule 8. *Id*.

22  The instant case involves only three copyrighted books, and the complaint alleges far fewer

23  discrete facts than did the complaint in *Perfect 10*.  While rule 8 does not "[require] heightened

24  fact pleading of specifics, [the complaint still needs] enough facts to state a claim to relief that is

25  plausible on its face." *Twombly*, 127 S. Ct. at 1974.  Aside from claims of ownership, the

26  complaint is devoid of any other specific facts related to the Published Work and alleged

27  copyright infringement.  Accordingly, EI's motion to dismiss for failure to state a claim will be

28

1    granted, with leave to amend.

2                                    **III.  THE GREAVES**

3    **A.  Legal Standards**

4            "Under the fiduciary shield doctrine, a person's mere association with a corporation that

5    causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction

6    over the person." *Davis v. Metro Prod. Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).  "On the other

7    hand, their status as employees does not somehow insulate them from jurisdiction. Each

8    defendant's contacts with the forum State must be assessed individually." *Id*. at 521 (citing

9    *Calder v. Jones,* 465 U.S. 783, 789 (1984)).

10           To establish personal jurisdiction, a plaintiff is "required to show that (1) defendants

11   purposefully availed themselves of the privilege of conducting activities in California, thereby

12   invoking the benefits and protections of its laws; (2) his claims arise out of defendants'

13   California-related activities; and (3) the exercise of jurisdiction would be reasonable." *Ziegler v.*

14   *Indian River County*, 64 F. 3d 470,473 (9th Cir. 1995). In the context of a motion to dismiss

15   based upon pleadings and affidavits, the plaintiff may meet this burden by making a *prima facie*

16   showing of personal jurisdiction.[3]  *Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th

17   Cir. 1990).

18           "The Ninth Circuit articulates the effects test [for purposeful availment] as a three-part

19   test requiring that personal jurisdiction be predicated on (1) international actions that are (2)

20   expressly aimed at the forum state, and (3) cause harm, 'the brunt of which is suffered-and which

21   the defendant knows is likely to be suffered-in the forum state.'" *Callaway Golf Corp. v. Royal*

22   *Canadian Golf Ass'n*., 125 F. Supp. 2d 1194, 1200 (9th Cir. 2000) (citing *Core-Vent v. Nobel*

23   *Industries*, 11 F.3d 1482, 1486 (9th Cir. 1993)).  In *Callaway*, the defendant, a Canadian

24   company, published a defamatory press release on its website.  *Id*. at 1198.  The *Callaway* court

25

26           [3]The Greaves object to portions of Cutler's declaration filed on January 9, 2009.  *See* Def.
27   Objections to Decl. of Pl., filed Jan. 16, 2009.   The Court has not relied upon those portions of
     the declaration and thus deem the objection immaterial.
28

1  found no purposeful availment by the defendant because the website was passive. *Id*. at 1204.

2  Unlike *Callaway*, the instant case involves more than defamation and libel from a website

3  posting.  The complaint also alleges breach of oral contract and fraud arising from Defendants'

4  conduct.  Cutler alleges that the Greaves were fully aware that she is a California resident and the

5  brunt of the harm would be felt by her in California.

6      The second requirement of the specific jurisdiction test is that the claims arise out of the

7  defendants' forum-related activities.  The complaint asserts that but for Defendants' forum-

8  related activities, Cutler's claims would not have arisen.

9      Even if the first two requirements are satisfied, the exercise of jurisdiction still must be

10  reasonable.  The Ninth Circuit has articulated seven factors to determine whether the exercise of

11  jurisdiction is reasonable.  *Callaway*, 125 F. Supp. 2d at 1205.  They are:

12  "(1) the extent of the [defendant's] purposeful interjection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum; (3) the extent of conflict with
13  the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the
dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of
14  the forum to the plaintiff's interest in convenient and effective relief; and (7) the
existence of an alternate forum."

15   *Callaway,* 125 F. Supp. 2d at 1205.

16  **B.  Analysis**

17      The complaint alleges that Defendant Lynn Greaves has traveled to California regularly to

18  meet with Cutler to discuss business matters and attend seminars taught by Cutler. *See* Cutler

19  Decl. at ¶ 4. The Greaves formed a business venture with Cutler and another California resident,

20  Defendant Guzzo.  The Greaves' purposeful injection into California was significant.  The

21  burden to the Greaves from litigating in California is no greater than the burden to Plaintiff from

22  litigating in Missouri.  "Where burdens are equal, this factor tips in favor of the defendants

23  because the law of personal jurisdiction is 'primary concerned with the defendant's burden.'"

24  *Ziegler*, 64 F. 3d at 475. There does not appear to be a conflict between the laws of Missouri and

25  of California.  *See* Pl. Opp. Mot. at 8:15-16. The fourth factor favors Cutler because  "California

26  maintains an interest in providing an effective means of redress for its residents who are

27  tortiously injured." *Indiana Plumbing v. Standard of Lynn, Inc*., 880 F. Supp. 743, 749 (C.D.

28

1  Cal. 1995) (*citing Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988)).  The

2  fifth factor is the efficiency of the forum, and "in evaluating this factor, we have looked primarily

3  at where the witnesses and the evidence are likely to be located."  *Ziegler*, 64 F. 3d at 475.  It is

4  likely that Cutler, Guzzo, and the Greaves will be witnesses in this action.  Cutler and Guzzo are

5  California residents, and the Greaves are Missouri residents; this factor therefore is neutral.  The

6  sixth factor is plaintiff's interest in convenient and effective relief.  While nothing in the record

7  establishes that effective relief would not be available to Cutler in Missouri, forcing her to file a

8  separate action against the Greaves in Missouri while her claims against other Defendants go

9  forward in California would inconvenience Cutler and would not be an efficient use of judicial

10  resources.  The final factor is availability of an alternate forum.  This factor favors the Greaves

11  because Missouri is an acceptable alternate forum.  In sum, factors 1, 4, and 6 favor Cutler,

12  factors 2 and 7 favor the Greaves, and factors 3 and 5 are neutral.  The balance of factors favors

13  Cutler.

14        The Greaves also argue that the Court lacks personal jurisdiction over them because the

15  alleged wrongful conduct occurred outside California.  Def. Reply Br. at 2: 3-11.  However,

16  jurisdiction over the Greaves is proper in California based on the "effects" of their Missouri

17  conduct in California.  *See Calder v. Jones*, 465 U.S. 783 (1984) (jurisdiction over the defendants

18  is proper in California when the jurisdiction is based on the effects of an article written by the

19  defendants in Florida).

20        Accordingly, the Court concludes that it has specific jurisdiction over the Greaves and the

21  motion to dismiss will be denied.

1

### IV.  ORDER

2        For the reasons discussed above, (1) EI's motion to dismiss for failure to plead with

3  specificity is GRANTED WITH LEAVE TO AMEND. Any amended complaint shall be filed

4  within thirty (30) days of the date of this order; (2) Greaves' motion to dismiss is DENIED;

5   and (3) a Case Management Conference is set for April 24, 2009, at 10:30 am.

6

7  **IT IS SO ORDERED.**

8

9  DATED: 2/23/09

10

11  _____

12  JEREMY FOGEL
    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 08-04650 JF (RS)
ORDER GRANTING DEFENDANT ENZYMES, INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND
AND DENYING DEFENDANT GREAVES' MOTION TO DISMISS
(JFEX1)                                    9

This Order was served on the following persons:

Ian Fraser-Thomson      ift@cwmlaw.com

James A. Lowe      info@gauntlettlaw.com, ams@gauntlettlaw.com, arm@gauntlettlaw.com, bse@gauntlettlaw.com, jal@gauntlettlaw.com, pam@gauntlettlaw.com

Sara J. Romano      sromano@donahue.com

Stephen Lewis Dahm      sdahm@cwmlaw.com, mmahrer@cwmlaw.com

William R. Hill      rock@donahue.com, pamt@donahue.com